IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**JOSEPH JEROME DUPREE,**

    Plaintiff,

v.                                                                              Civil Action No. **3:25CV190**

**ROY WITHAM,** *et al.*,

    Defendants.

## MEMORANDUM OPINION

Joseph Jerome Dupree, a pretrial detainee proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1]  The matter is before the Court for evaluation of the Particularized Complaint (ECF No. 17) pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.  For the reasons set forth below, only Mr. Dupree's claim against Officer T. Fleming survives the Court's screening obligations.  Mr. Dupree's claims against Colonel Roy Witham and Captain Wynne, two supervisory officials at his jail, will be DISMISSED for failure to state a claim.

### I.     PRELIMINARY REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely

"conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II.  SUMMARY OF ALLEGATIONS AND CLAIMS

In his Particularized Complaint, Mr. Dupree names as Defendants: Roy Witham, Colonel / Jail Administrator; Captain Wynne; and Officer T. Fleming. (ECF No. 17, at 1.)[2] The Particularized Complaint alleges the following facts as to each Defendant's role:

>   1. Colonel Roy Witham is the Virginia Peninsula Regional Jail [("VPRJ")] Administrator and at all times acts under color of state law. He is the highest ranking official and oversees all employees and security detail at V.P.R.J. Defendant is held responsible for the deliberate indifference of his captains and officers who violated my 8th Amendment. I hold Defendant accountable in both his official and individual capacity.
>
>   2. Captain Wynne is the Head of Security at Virginia Peninsula Regional Jail, and at all times acts under color of state law. Defendant is responsible for officers' negligence and the safety of all inmates. Defendant is deliberately indifferent and guilty

---

[2] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the spelling, capitalization, and punctuation in quotations from the Particularized Complaint.

of violating my 8th Amendment. I hold Defendant responsible in both his official and individual capacity.

       3.       Officer Fleming is a correctional officer at Virginia Peninsula Regional Jail. Defendant acts under color of state law at all times. Defendant is responsible for safety of inmates and has an obligation to protect and training to de-escalate situations when they arise. On Jan 2, 2025, Defendant opened my cell door when his common sense and training told him not to.

(ECF No. 17, at 2–3.)

As to the incident underlying Mr. Dupree's claim, the Particularized Complaint alleges:

       1.       At approximately 8:00 am January 2, 2025 Inmate James Mullins and Anthony Nelligar were yelling out their cell doors "123" and "127" that they were going to kill me when we came out for recreation over and over again.
       2.       At approximately 8:15 am, Defendant Officer T. Fleming conducted a safety round. Once he was downstairs and reached my cell "125" I told Officer T. Fleming I needed to speak with the shift lead "Lt. D. Crudup." Defendant Officer T. Fleming asked me why, and I told Defendant inmates Anthony Nelligar and James Mullins threatened to kill me when we come out for recreation more than once and that I'm in fear of my life and need to be moved. Defendant stated, "whatever, Dupree," and kept walking "out [of] the unit, Delta unit."
       3.       Approximately 8:45 am Defendant walked back into Delta unit to conduct another safety round and again I told Defendant that I truly was in fear of losing my life and need to talk to the shift lead "Lt. D. Crudup," to be moved out of Delta unit. Defendant just looked at me and walked away not even responding.
       4.       At approximately 9:05 am Officer T. Fleming opened up cell doors for recreation starting at "105." Once at "123," Nelligar's cell, he comes right to my cell door, "125," and began to pull on my cell door trying to open it to get to me. While Defendant Officer T. Fleming was pressing the button to open my cell I was holding my door closed with my foot.
       5.       As Anthony Nelligar was pulling on my cell door he was yelling you [are] going to die today nigger, this [is the] "Aryan Brotherhood Unit." He then started to yank on my cell door handle yelling "open 125, I'ma kill this nigger." Officer T. Fleming looking right at my cell as Nelligar was yelling and pulling on my door, looked me right in my eyes through the door window, I shook my head no, as I was yelling to him "don't open my door," Officer T. Fleming reached down to the control button and pressed for my cell to be opened again. I then had to use my hands and foot to keep my door from being pulled open [by] Nelligar. While I'm trying to keep Nelligar from getting in my cell, Inmate James Mullins comes from out [of] his cell "127" and took off his eyeglasses, put them down on a table in front of my cell and began yelling "open 125." James Mullins is also Aryan Brotherhood. Mullins stood on the side of my cell waiting for my door to open, and was joined by another Aryan Brotherhood member. Nelligar stated to the other

> two members, "We're about to kill this nigger," and began yanking on my cell door again as he yelled "open 125."
>
> Two other inmates walked over to try and calm Nelligar and Mullins which caused Nelligar to walk away from my door and stand approximately 4 to 5 feet away from my cell door to talk to the other two inmates. I then used that split time to call an inmate over to my cell "Dametruse," and told him to go to the Officer "T. Fleming," and tell him to stop trying to open my door for them to get in my cell, I'm in fear of losing my life, and approximately two minutes after being told not to, Officer T. Fleming opened my cell door anyway and I was assaulted by two other inmates.
>
> I sustained an injured hip, I was spit on "in my face," I then was put in solitary confinement for (7) months "by myself," and received charges which I received more time for. Officer T. Fleming against his training and common sense that would tell him there's definitely an issue here after being told so over and over again. . . . Officer T. Fleming still opens my cell door.

(*Id.* at 3–5.)

Mr. Dupree seeks monetary damages. (*Id.* at 7.)

The Court construes the Particularized Complaint to raise claims under the Fourteenth Amendment, for failure to protect, against Defendants Witham, Wynne, and Fleming.

### III.   ANALYSIS

The Particularized Complaint adequately states a Fourteenth Amendment claim for relief against Defendant Fleming under a failure to protect theory to survive the Court's screening obligations under 28 U.S.C. §§ 1915A and 1915(e)(2). *See, e.g.*, *Carter v. Irving*, No. 3:24cv293, 2025 WL 1662465, at *6 (E.D. Va. June 11, 2025) (setting forth elements of a Fourteenth Amendment failure to protect claim) citing *Short v. Hartman*, 87 F.4th 593, 605 (4th Cir. 2023))).

Mr. Dupree's claims against Defendants Witham and Wynne, however, will be dismissed because the Particularized Complaint does not plausibly suggest that these individuals were personally involved in the deprivation of Mr. Dupree's rights. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citations omitted). To state a legally

sufficient claim for an alleged violation of a federal constitutional right, "[a] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Accordingly, the plaintiff must allege facts that affirmatively show "that the official charged acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (internal quotation marks omitted); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability is "personal, based upon each defendant's own constitutional violations").

Here, Mr. Dupree does not allege that Defendants Witham or Wynne directly participated in any violation of his rights and instead seeks to hold them liable for serving, respectively, as "the highest ranking official" and "the head of security" at VPRJ. (ECF No. 17, at 1.) In other words, Mr. Dupree attempts to impose liability on Witham and Wynne based on their supervisory roles at the facility. Contrary to Mr. Dupree's suggestion, these defendants may not be held liable simply because they supervised another individual who may have violated his rights. *Vinnedge*, 550 F.2d at 928. To the extent that Mr. Dupree believes that Witham or Wynne are liable under a theory of *respondeat superior* simply based on their roles within the jail, he fails to state a claim for relief. *Iqbal*, 556 U.S. at 676 (citations omitted).[3] In sum, Mr. Dupree fails to allege facts that would

---

[3] To show that a supervising officer failed to fulfill his duties to protect an inmate by ensuring his subordinates act within the law, the inmate must show that:

(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)) (internal quotation marks omitted) (citations omitted). Mr. Dupree fails to allege facts that support any one of these three factors.

plausibly allege that Defendants Witham or Wynne personally violated his constitutional rights. The Particularized Complaint therefore fails to state a claim for relief against these Defendants, and any such claims and will be DISMISSED with prejudice.

### IV.   CONCLUSION

For the foregoing reasons, Mr. Dupree's claims against Defendants Witham and Wynne will be DISMISSED for failure to state a claim. Mr. Dupree's claim against Defendant T. Fleming sufficiently states a Fourteenth Amendment claim to survive the Court's screening obligations.

The Court will continue to process the action against Defendant T. Fleming.

An appropriate Order will accompany this Memorandum Opinion.

/s/ RCY
Roderick C. Young
United States District Judge

Date: November 24, 2025
Richmond, Virginia